The next case this morning is 5-24-1171, People v. Smith. Arguing for the appellant is Carly Gustafsson. Arguing for the appellee is Victoria Joseph. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. How are you all? Good morning, I'm well, your honor. Thank you. Great. Ms. Gustafsson, are you ready to proceed with your argument? I am, your honor. Then go right ahead. Good morning, your honors, counsel, and may it please the court. My name is Carly Gustafsson with the Office of the State Appellate Defender, and I'm representing the appellant, Mr. Bajie Smith. I plan to focus my argument today on the first issue concerning ineffective assistance of counsel, though I'm happy to answer any questions the court may have of me. The jury in this case was charged with determining whether my client committed home invasion, violation of a protective order, and two theories of domestic battery for breaking down the door of his ex-girlfriend, Ms. Johnson, and strangling her after the pair had spent the evening together drinking and discussing their relationship issues. The heart of this case is State's Exhibit 5, which the state called a certified record of the protective order. But this exhibit contained not just the protective order itself, but also five pages of Ms. Johnson's handwritten allegations of four prior domestic violence incidences with my client. Allegations that my client had made Johnson fear for her life on multiple occasions by kicking in her door, by choking her, or by making threats to this effect. In other words, allegations which essentially mirrored the charged conduct in this case. The petition is not part of the order, and it never should have been admitted here. Because trial counsel failed to use the rules of evidence to shield her client from this highly prejudicial document, and failed to develop any rational or coherent trial strategy to respond to its admission, her assistance was ineffective, and this court should reverse Mr. Smith's conviction and remand for a new trial. Doesn't the state argue that the reason that there was no objection to that was because they basically were going to concede at trial the violation of the order of protection? And so how would it matter then? Yes, your honor. So the state does argue that the, and they are correct in saying that this counsel at trial argued that they were conceding the violation of protective order charge. However, there was no need to include the petition in the order in order to have that effectively. So... But how does it make any difference to the outcome of the trial in whole by having that in there, if that was a conceded issue? Because the petition contained those allegations of prior incidents with my client, which the trial court had not had the opportunity to view, had not deemed admissible in this case. And the allegations mirrored the charge conduct in this case, which deems them highly prejudicial. And because the allegations were so similar, we have to assume that the jury considered them and relied on them when they were making the determinations in this case. And that is sufficient here to show that either they were unfair under this court's decision in Moore, or if we can't know to which extent they relied on them, then it is sufficient to show that the results are unreliable under Moore. Why wouldn't it have been admissible under the Code of Criminal Procedure? 115-7.4 says other incidents are admissible. I mean, the legislature in recent years has let in more propensity evidence, such as in child sex offenses and now domestic violence cases. Why wouldn't it have been admissible anyway? Yes, Your Honor. So under section 115-7.4, there is three subsections, as this court is aware, that the trial court is meant to weigh in determining admissibility. Now, admittedly, under the first two subsections, the allegations here were close in time and were factually similar. However, the third factor in this case is important, which relies on other facts and circumstances. And several cases support that the lack of any corroborating evidence is relevant when considering this factor because it decreases the probative value and increases the prejudicial effect. There was no corroboration here. Instead, the jury was presented with these one-sided allegations that had no extrinsic support and do not rise above a mere suspicion. But the court issued an order of protection, so doesn't that show that the court found those were, the issuing court, not the trial court, but the issuing court found those were valid allegations, they entered an order of protection. Certainly, Your Honor, that may indicate that the issuing court who issued the order of protection found that the allegations were sufficient for an order of protection, but that is a different standard of evidence than beyond a reasonable doubt in this case in order to admit the cases for, well, let me rephrase that. So as our Supreme Court is under people v. Dabbs, the section 115-7.4 must be construed narrowly preserving the protections of the rules of evidence as much as possible. So when considering whether to admit these allegations, the court is meant to ensure that the allegations are not cumulative. And as this court is aware, there was a prior admission, or I'm sorry, a prior conviction in this case that was properly litigated before the court and was admissible. So it is notable that the allegations contained in this petition were not subjected to the same admissibility determination and nevertheless were still given to the jury as they deliberated. And they were free to read and reread as much as they wanted as they were coming to their verdict in this case. And moreover, counsel failed to even alert the trial court of the contents of the petition, despite the fact that notice is required under the section. And in Donahoe, our Supreme Court found that a trial court acted properly where it allowed a signed confession of a prior conviction to be used for impeachment purposes, but it did not allow the state to submit written copies to the jury. But the exact opposite happened here. The contents of the petition were not used for impeachment purposes, but the jury nevertheless had unlimited access to review, consider, and weigh multiple instances of inadmissible, highly prejudicial evidence. And the jury considered this evidence without the benefit of counsel having utilized the petition to strengthen her theory of the case, that Johnson was not a reliable witness. Counsel had access to three discrete sources of impeachment, each claiming to describe the details of the December 24th, 2023 incident, the sworn officer statement, which was admitted to establish the factual basis of the prior offense, the petition, and Johnson's in-court testimony. Her accounting of the events of that day varied on significant factual issues, including whether Smith choked her for five minutes or just attempted to get at her neck, whether Smith broke her phone when she tried to call for help or whether she used that phone to call 911, and whether Smith locked her outside for an hour on a freezing December night while severely underdressed, whether he prevented her from leaving the home or whether he made no restrictions on her movement whatsoever. Despite having this ample material to work with, trial counsel made no attempt to impeach Johnson about the details of this prior incident. The jury was not able to witness counsel draw out the inconsistent narratives of the prior conviction and did not get to judge her demeanor when confronted with this evidence. And under People v. Saldago, this constitutes ineffective assistance. There is no rational trial strategy in allowing the highly prejudicial petition into evidence and then failing to use it to point out the inconsistencies in the accounts of the state star witness, especially in light of the fact that the petition did not need to be introduced as an exhibit in order for counsel to use it for impeachment purposes. These errors were then compounded by counsel's lack of a coherent trial strategy regarding IPI 3.14 in this case. Counsel did not request 3.14 during the instructions conference, but also voiced no objection to the trial court's sua sponte decision that it should be given. The committee instructions clearly state that where the defendant concedes that he was involved in the prior offense, certain language should be excluded from the instruction. Namely, it is for you to determine whether the defendant was involved in that offense, and if so, what weight should be given to this evidence. But the jury here was provided with definitive proof that Smith had been involved in the December 2023 offense by way of certified conviction. So there was no proper charge for them to determine whether he was involved in and no method for them to follow this instruction, other than to turn to the improperly admitted other crimes allegations contained in the petition. And under your allegation, the counsel was ineffective. How do you overcome the prejudice requirement where there's a 911 call where you can hear what's going on in the background? When the police officer arrived, he saw the defendant shove the victim to the ground and choking her or making contact with her at a minimum. How do you get past the prejudice? As well as the officer witnessed and testified that the door was broken down. So I mean, all the other issues were witnessed by the officer who arrived on scene. Yes, Your Honor, and we don't dispute that there may have been sufficient evidence in this case to convict Mr. Smith. But as this court is aware, the question of sufficiency is separate from the question of ineffective assistance and the prejudice question. So and again, as this case court stated in People v. Moore, Mr. Smith does not need to show that the outcome would be different. He needs to show that counsel's deficient performance rendered the result of the trial unreliable or the proceedings fundamentally unfair. And where we must assume that the jury considered and relied on these prior allegations in reaching its verdict, then that is sufficient under Moore to show that the proceedings were unfair or alternatively, if we can't know to what extent they relied on them, that is sufficient to show that the results are unreliable. In either case, it meets the bar for prejudice. I see my time has expired. So we ask that Mr. Smith's conviction be reversed and the case remanded for a new trial. Thank you. Justice Vaughn or Justice Barber, do you have any final questions? No, thank you. No other questions, thank you. And obviously, counsel, you'll have your time for rebuttal. Sorry, making a note. Ms. Joseph, go right ahead. Thank you, Your Honors. Good morning, Your Honors. Counsel, may it please the court. I am Victoria Joseph, representing the people of the state of Illinois. As Your Honors are well aware of the Strickland standard, defendant has to show both deficient performance and prejudice. Does the state at least concede that the petition should not have been included in the record when the record was admitted as an exhibit? It should have just been the fact there was an order of protection, not inclusive of the petition. Do you agree with that or do you disagree? I'm not going to concede that, Your Honor, as it was still relevant to establish the basis for the order of protection. And as Your Honors did point out, had it been properly litigated prior to trial, it likely would have come in both under 7.4 and potentially under 404B as it was being admitted as part of the evidence of the violation of the order of protection. But we also know that we can determine this directly on prejudice alone. And here, even without the alleged errors by defense counsel, the jury still acquitted the defendant of aggravated domestic battery. That is the very count that the people explicitly used the other crimes evidence to support. And it's also the very count that much of the statements in the petition directly related to, which was the strangulation. The jury still chose not to find him guilty. So it's very hard to claim that the jury was misusing statements in the petition when the very offense that should have led to a guilty verdict, if they were using it as propensity to strangle the victim, they did not. And in addition to that, every other offense had that additional extrinsic and or collaborating testimony from the officer to support the conviction. So even if the petition had not been included, even if defense counsel further impeached the victim, you still have the independent testimony of the officer who actually saw the domestic battery of pushing the victim down, saw the damage to the door, photographed that damage, had the 911 call where we did hear both the setting and the ruckus going on and the victim tell the defendant to get away. And we had the photograph of her injury. So each of these would have sufficiently supported. And in closing argument, I think it's also important to look at closing argument and how the people used each of these pieces of evidence. The other crimes evidence was specifically addressed to the aggravated domestic battery charge. Saying defendant had done it before and the information was read to the jury of the previous charge for which he was convicted of grabbing the victim by the throat. In contrast, the order of protection was used both to support the violation of the order of protection and was used as evidence of him not having authority to be at her home or in her home. So those were how it was used. So even if the jury instruction was imperfect, the jury was not misled into using additional evidence for propensity purposes, which is the biggest concern that appeared throughout defendant's brief. So under the prejudice prong, the people maintain that defendant's claims would fail on ineffective assistance of counsel. In addition, defendant criticized me for not addressing the cases that talk about the lack of corroborating evidence to support other crimes evidence and that when it's not verified or corroborated and one-sided, it's not likely to be admitted. None of the cases defendant cites stand for that proposition. Jank did not hold it. Pizzo explicitly says that Jank did not hold it. At paragraph 98, the fact that the trial court admitted three of six other crimes evidence because three were supported by corroborating evidence was what the trial court decided to do. The appellate court merely affirmed the trial court properly considered the statutory factors and conducted a balancing test. It made no findings as the correctness of the reasoning for the trial court's balancing. Simmons also does not address it and even says the deficiencies in the other crimes evidence goes to the weight and not the admissibility. The central issues there was identification and the match bullet plus the other crimes evidence was sufficient to corroborate what the eyewitnesses of the murder case was. Pizzo recognizes that yes, this can be considered under the third statutory factor of other considerations and it may decrease the probative value or increase the prejudice or both but it does not as a matter of law render the evidence inadmissible. In fact, the appellate court still affirmed the trial court's admission of uncooperated testimony about a prior domestic violence incident that was expunged in that case. In each of those cases, the appellate court affirmed the admission of the evidence. If there are no other questions. Justice Barberis? I have none, thank you. Go right ahead, counsel. People of the state of Illinois ask that you affirm. Thank you. Rebuttal? Yes, your honor, thank you. I'd like to address a couple of points that were brought up in the state's argument. First, the state argues that the admissions, or I'm sorry, that the allegations would have been admitted and that's speculative, your honors. I believe that as I argued, the addition of five, four or five additional allegations beyond the conviction in this case would have been cumulative. And as there were no extrinsic evidence, it doesn't rise above a mere suspicion in this case. And again, as the allegations did mirror the charge conduct in this case, that increases the prejudicial effect here and increases the likelihood that the jury, especially when armed with the incorrect 3.14 instruction, which charged them to determine whether he was involved in an offense, despite the fact that they had a certified conviction for the proper offense, it makes clear that the jury could only have considered those improper allegations when they were using the 3.14 instruction. The state also argues that the partial acquittal in this case makes it non-prejudicial. The state offers no authority to support that argument. However, in my brief, I did support, I did include a couple of cases that are 30 plus years old that have stated that that is the case. However, again, they are disadvantaged by the fact that they are 30 plus years old. And in the Skilling case, Justice Sotomayor stated that there is a more nuanced position that is taken by courts currently, that is informed by both social sciences and corresponding developments in case law. Further, the cases that I cited at People v. Cobbins nearly created the proposition that prejudice can't exist in partial acquittals out of thin air. And People v. relied on the finding in People v. Cobbins. And as our Supreme Court has found in People v. Ratliff, holdings that are not the result of principled analysis should not be continually relied upon. So I don't believe that there is any basis to the argument that the partial acquittal indicates that there's no prejudice here. And finally, the state also argued that the jury was not misled into using the additional evidence for propensity purposes. However, in so doing, it argues that the allegations are all similar and would have been admitted. I think it's important in this case and in cases like this to consider the nature of the charge. This is a domestic battery, domestic violence case. And in cases like this, it's common for there to be a series of events that leads up to a charge. But under the state's theory, this would allow for endless amounts of prior incidents to be admitted in order to establish this case. There has to be a limit. There has to be a limit as to what is admissible in order to prove propensity in this case. We cannot just admit endless allegations of prior conduct in order to allow the state to prove its case. And I think that would be not only overly cumulative, but highly prejudicial and would, especially when combined with a improper jury instruction, would point the jury into determining based on improper grounds, based on the propensity allegations. So in some trial counsels, ineffective assistance in this case permitted inadmissible, highly prejudicial evidence to be submitted to the jury during deliberations without the evidence having been utilized for its impeachment value. And these errors were compounded by an improperly tailored jury instruction, which invited the jury to speculate. And if this court doesn't have any further questions for me, we would ask that Mr. Smith's conviction be reversed and his case remanded for a new trial. Justice Barberis or Justice Vaughn, any final questions? None, thank you. I have no other questions. Thank you. Well, thank you, counsel. Obviously, we'll take the matter under advisement. We'll issue an order due course. I believe we're going to take a few minutes. I think she said her name, Ms. Davison, like a long A, didn't she? Yes.